IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA GOLIC<br>610 Hogeland Lane<br>Bensalem, PA 19020<br><br>      Plaintiff,<br>  v.<br><br>EQUITY PRIME MORTGAGE, LLC<br>d/b/a EPM<br>5 Concourse Pkwy, Suite 2250<br>Atlanta, GA 30328<br><br>      Defendant. | CIVIL ACTION<br><br><br>No.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Anna Golic ("Plaintiff") against Defendant Equity Prime Mortgage, LLC d/b/a EPM ("Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et. seq.); the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, et. seq.); and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States. There lies supplemental

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims set forth herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district; and in addition, Defendant is deemed to reside where they are subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## **PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual residing at an address as set forth in the caption.

7. Defendant is a foreign business corporation, duly registered under the laws of the State of Georgia with a principal place of business as set forth in the caption.

8. Defendant is a licensed mortgage lender operating in all 50 states providing a variety of mortgage related products.

8. At all times relevant herein, Defendant acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is a disabled female. She is diagnosed with chronic and debilitating migraines and associated complications.

11. As a result of her aforementioned serious medical conditions and disabilities, Plaintiff is, at times, substantially limited in her ability to perform daily life activities such as sleeping, focusing on tasks, driving, managing light sensitivity, and processing auditory inputs.

12. On or about May 18, 2020, Defendant hired Plaintiff as a Director of Loan Servicing remotely based in Bensalem, PA through her unlawful termination as discussed herein on or about December 31, 2023.

13. During her employment with Defendant, Plaintiff was supervised by Stephen Carpitella (a Partner and Chief Retail Officer – "CRO"), whose employment ended in July of 2023; Majed Qminacci (a Chief Financial Officer – "CFO"), whose employment ended on or about September 17, 2023; and finally, CFO Scott Issel ("Issel"), who was employed from September of 2023 (in the aforesaid role) through Plaintiff's termination from employment.

14. Issel was the primary manager who directly supervised Plaintiff during her approximately last 3.5 months of employment.

15. Plaintiff also regularly worked and communicated with Jamies Minghini ("Minghini") (Chief Compliance Officer – "CCO") and Laura Brandao ("Brando") (Member of Defendant), who were both employed through Plaintiff's termination from employment.

16. Prior to Issel assuming CFO position in or about September 2023, Plaintiff was a highly valued employee, performed exceptionally and was shown appreciation for the quality, care, and expertise she displayed in her work.

17. In or about mid-year 2022, Defendant gave Plaintiff multiple accolades and bonus compensation for numerous successes, in large part due to her handling a book of more than $90 Million in sales.

18. In or about August 2023 (immediately before Issel assumed CFO duties), Plaintiff was again recognized for her outstanding performance and awarded another bonus and salary increase to recognize her exceptional work.

19. Around this same time, in or about July 2023, Plaintiff's husband was undergoing screening for a suspected cancer diagnosis.

20. Plaintiff was communicating informally with Defendant's executive leadership about her husband's ongoing scares, diagnostic testing, medical condition, and likely cancer diagnosis.

21. By mid-September 2023, it was well known that Plaintiff's husband had been diagnosed with cancer (along with other serious medical issues) and Plaintiff was sharing such information to be transparent that she would need to be taking periodic days or weeks (or longer) off to provide care for her husband.

22. By way of <u>documented</u> examples only, between September and October 2023 (via internal chat messages): (1) Plaintiff was discussing her husband's cancer diagnosis and need for surgery/radiation therapy with Brando; (2) Plaintiff was discussing her husband's heart and cancer complications with Minghini; and (3) Plaintiff was discussing her husband's serious

health conditions with other employees/management. These are chat messages *that are documented*.

26. 23. On or about September 25, 2023, Plaintiff met with Issel who had assumed CFO duties (after a revolving door of CFOs) and shared with him that: (1) her husband was very ill with cancer and heart problems; (2) she would likely need to take periodic days or weeks off to care for him as his treatment plan evolved; and (3) she would occasionally need to take partial days off to treat her own aforementioned disabilities when her chronic migraines flared up.

24. Plaintiff updated Issel verbally or via chat message on days that her chronic migraines flared up and she required a partial day off.

25. Plaintiff was at all times open, transparent, and honest about her own aforementioned disabilities and her husband's serious medical conditions for planning and scheduling purposes.

26. Plaintiff's prior supervisors and management had typically been accommodating and Plaintiff, feeling comfortable in the environment with executive management, had previously had numerous discussions with Phil Mancuso (President, CIO, and Member of Defendant) about her husband's health problems and her need to take intermittent time off to care for him.

27. However, there was an open institutional concern about health insurance with executive leadership openly complaining during a November 2023 town hall meeting that health insurance premiums were too high due to employees who smoked or who had other health problems.

28. Obviously, Plaintiff's husband's serious medical conditions posed a significant cost to Defendant (as Plaintiff and her husband were under Plaintiff's insurance through Defendant).

29. Shortly thereafter, on or about November 27, 2023, Defendant updated the organizational chart within Plaintiff's department to show a new Loan Servicing Director named Madgie Rizk ("Rizk") had been hired for the <u>exact same</u> job title as Plaintiff.

30. To be clear, there is only one (1) Loan Servicing Director needed and Rizk was obviously replacing Plaintiff as Loan Servicing Director.

31. As a result, and totally perplexed, Plaintiff sent Issel a chat message asking, "Hi – do we have another servicing director starting?"

32. Issel asked where Plaintiff had heard that information and when Plaintiff informed Issel she had seen the new organizational chart and asked if Friday was her last day, Issel only gave an evasive non-answer and asked to meet later that morning to discuss.

33. Later that morning, Issel informed Plaintiff that her last day of employment would be December 15, 2023, because Issel wanted Plaintiff to orient and train her replacement (Rizk) since she had learned about his hiring earlier than Issel intended.

34. Plaintiff had worked for Defendant for nearly four (4) years, had no history of discipline or performance concerns, and was by all accounts an exemplary employee.

35. When Plaintiff asked Issel why she was being replaced, Issel only stated that Defendant decided to "go in a different direction" and apologized for the manner in which Plaintiff found out she was being terminated.

36. Plaintiff pressed and asked Issel if her performance was related to the underlying decision to replace her and Issel confirmed that she had no performance issues.

37. On or about November 29, 2023, Plaintiff then followed up with Minghini via chat message and asked if she was "being let go for something I did incorrectly?" Minghini confirmed that it was nothing performance related and stated only that Defendant was going in a "different direction."

38. Defendant then temporarily removed Rizk from the organization chart and internal system to avoid advertising to other employees that he was in fact replacing Plaintiff.

39. In the midst of learning that she was being terminated in an upsetting, unprofessional and reckless manner, Plaintiff was still updating and coordinating with Defendant about her need to care for her husband.

40. For example, on or about November 29, 2023, Plaintiff emailed Minghini and Issel that her husband's treatment is "starting and I need to take Dec. 7th to go with him," reiterating his "health situation/cancer."

41. On or about December 4, 2023, Plaintiff confirmed additional days off to take her husband to cancer related doctor's appointments.

42. The aforementioned discussions are merely examples as Plaintiff was having ongoing discussing with Defendant's management about her need for time off and it was well known as of mid-September, as discussed *supra*, that her husband had been diagnosed with cancer and heart issues, was going to need radiation and other therapy, and that Plaintiff would unfortunately miss a substantial amount of time (which should have been protected under the FMLA).

43. Plaintiff's original termination date was supposed to be December 15, 2023, however, Issel requested Plaintiff stay through December 31, 2023, for two (2) reasons: (1) to

continue training Rizk; and (2) to help with a Lakeview MSR Sale, which was too advanced and complicated for Rizk to handle.

44. This request was communicated in internal chat messages with Issel, where he contemporaneously referenced that he knew Plaintiff had "a lot going on with your husband" and that she "need to go to his visits," but he wanted her to help Rizk with the Lakeview MSR sale that had to close by the end of December 2023 even though Plaintiff was going to "miss some time going to Dr's apts."

45. Issel told Plaintiff that Rizk was to start his employment on or about December 4, 2023, but upon information and belief, Rizk began employment on December 1, 2023.

46. While Plaintiff was training Rizk, it became open and obvious that he was not familiar with any of Defendant's processes, lacked knowledge on certain types of recurring transactions, was not familiar with steps needed to take to complete various tasks, and was not familiar with third-parties whom Plaintiff usually coordinated with for Defendant.

47. In other words, Plaintiff had the ability to see first-hand by training Rizk that she was <u>far more qualified</u> than Rizk for the same job she had been performing at an exemplary level for *nearly* four years.

48. While Plaintiff could have done minimal work upon finding out she was being unlawfully replaced, she worked extremely hard to complete her tasks and train a woefully incompetent Rizk – a testament to her nature and work ethic.

49. On or about December 21, 2023, Issel even was compelled to thank Plaintiff for her "hard work these last couple weeks."

50. Plaintiff was still terminated effective December 31, 2023, for discriminatory and retaliatory reasons under pretextual circumstances.

51. Plaintiff was replaced by a less qualified employee, was told it had nothing to do with her performance, and the company was just going a "different direction" shortly after she disclosed her own aforementioned disability (chronic migraines), used accommodations for her own disability (intermittent time off from work or breaks), disclosed her husbands serious medical condition, and shared that she would require intermittent and block periods of time off to provide care to her husband all of which should have been FMLA protected.

52. Defendant then attempted to covertly replace Plaintiff with no notice or explanation and then insultingly required her to train her own replacement who – based upon Plaintiff's personal observations – was nowhere near familiar or qualified for the role Plaintiff had performed in an exemplary manner for nearly four (4) years.

## COUNT I
## Violations of the ADA
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; [4] Associational Disability Discrimination)

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff suffers from qualifying health conditions under the ADA which affects her ability (at times) to perform some daily life activities (set forth *supra*).

55. Despite Plaintiff's aforementioned health conditions and limitations, she is still able to perform the duties of her job well with Defendant, however, Plaintiff did require reasonable medical accommodations at times.

56. Plaintiff requested reasonable accommodations from Defendant, including but not limited to time off work to treat for and care for her disabilities.

57. Defendant failed to accommodate Plaintiff's aforesaid requests by refusing to allow Plaintiff to take time off to treat and care for her disabilities.

58. Plaintiff further believes and therefore avers that her disabilities were a motivating/determinative factor in the termination of her employment with Defendant.

59. Plaintiff also believes and therefore avers that she was terminated in retaliation for engaging in protected activity (requesting accommodations and objecting to discriminatory practices) under the ADA.

60. Plaintiff further avers that Defendant perceived Plaintiff as needing too much time off or otherwise considered her husband's health conditions; (b) perceived Plaintiff as distracted by her husband's health conditions outside of work; (c) had negative perceptions of the cost of Plaintiff's husband's health coverage; and/or (d) had other negative perceptions of Plaintiff in association with her husband's health conditions.

61. Defendant's actions as aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the FMLA
### ([1] Interference; and [2] Retaliation

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. Plaintiff was a full-time employee who worked for Defendant for more than 1 year within a location that employed at least 50 employees within 75 miles.

64. Plaintiff exercised her FMLA entitlements for over a decade on an "intermittent" basis, as permitted by the FMLA.

65. At all times in 2023, Plaintiff was an FMLA eligible employee who never exceeded her 12-weeks of allotted FMLA time by federal law(s).

66. Plaintiff seeks relief herein for Defendant terminating her: (1) because of her need for FMLA leave to care for her own serious medical condition as well as her husband's serious

medical condition; (2) to prevent further her from using FMLA leave; (3) to dissuade Plaintiff and other employees from use of FMLA; (4) through interference resulting from Defendant not following FMLA regulations causing Plaintiff prejudice, suspension, and termination; and (5) for other violations of regulations as can be construed from this Complaint.

67. These actions as aforesaid constitute both FMLA interference and retaliation violations.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered unlawful payment practices, retaliation, and discrimination at the hands of Defendant until the date of verdict;

B. Plaintiff is to be awarded liquidated or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.	Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.	Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Ari R. Karpf
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Date:  May 29, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Anna Golic : CIVIL ACTION
v. :
:
Equity Prime Mortgage, LLC d/b/a EPM : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 5/29/2024 | _(signature)_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __610 Hogeland Lane, Bensalem, PA 19020__

Address of Defendant: __5 Concourse Parkwayt, Suite 2250, Atlanta, GA 30328__

Place of Accident, Incident or Transaction: __Defendant place of business__

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case  [ ] is / [X] is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __5/29/2024__  _____  __ARK2484 / 91538__
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf__, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: __5/29/2024__  _____  __ARK2484 / 91538__
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

| JS 44 (Rev. 06/17) | CIVIL COVER SHEET |
|---|---|

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GOLIC, ANNA

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
EQUITY PRIME MORTGAGE, LLC D/B/A EPM

County of Residence of First Listed Defendant: Fulton
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 751 Family and Medical Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| | | | 790 Other Labor Litigation | 865 RSI (405(g)) | 891 Agricultural Acts |
| | | | 791 Employee Retirement Income Security Act | | 893 Environmental Matters |
| | | | | | 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | 896 Arbitration |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | 950 Constitutionality of State Statutes |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | |
| 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | 535 Death Penalty | | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | 448 Education | 540 Mandamus & Other | 462 Naturalization Application | | |
| | | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 5/29/2024
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE